Sheryl VANDER POL, Plaintiff
and Appellant,

v.

Galen VANDER POL, Defendant
and Appellee.

No. 17528.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1992.

Decided April 29, 1992.

Wally Eklund of Johnson, Eklund & Abourezk, Gregory, for plaintiff and appellee.

Karen L. Crew, Crew & Crew, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

Sheryl Vander Pol appeals the judgment and decree of divorce entered March 14, 1991. We affirm in part, reverse in part and remand.

### FACTS

Sheryl Vander Pol (wife) and Galen Vander Pol (husband) were married in Douglas County, South Dakota, September 1, 1972. Their first child was born in 1974, and their second in 1979. The custody and support of the children are not at issue in this appeal.

Husband and wife primarily engaged in farming for most of their married life. Husband's activities were principally directed at running the farm operation while wife kept books for the farm, ran errands and performed chores, and maintained the traditional role of housewife and mother. The parties were very successful in their farming operation and accumulated substantial marital assets and property through the course of their marriage.

In addition to farming a parcel of land, approximately 320 acres, which they purchased during the marriage, husband sharecropped land owned by his family. Husband also purchased a one-half interest in a seed house, Fairway Seed, which was a profitable partnership between husband and a corporation composed of several of his friends. Wife's hobby during the marriage was painting tiles and sinks, and she gradually developed her hobby into a career interest. Since separating from her husband, she has moved to Minneapolis and opened her own ceramic and interior design business, which, although a small venture, has proved profitable.

The breakdown of the marriage occurred in March of 1989 following an incident of domestic violence, in which husband broke wife's elbow. Wife moved to Minneapolis for three months but returned to the marital home for the fall of 1989 and spring of 1990. At the conclusion of her children's school year in the spring of 1990, wife moved back to Minneapolis permanently.

A trial was held on March 14, 1991, at which time the trial court entered a judgment and decree of divorce on the ground of irreconcilable differences. Trial court awarded husband the farm property and buildings including the marital home, machinery and equipment, feed, grain and growing crops, and all titled vehicles except wife's personal car. It awarded wife the entire interest in Fairway Seed at a value of $55,000, the entire interest in her ceramic and interior decorating business, and awarded her some personal property, which included a chest of drawers, bedroom set, antique tables, and some photographs. Both parties were allowed to keep personal property already in their possession.

The trial court further ordered husband to pay wife $23,000 over five years in installments which would coincide with cash flow from the farm operation during the growing and harvesting seasons. It ordered husband to be responsible for all debts relative to the farming operation, while wife was responsible for the obligations at Fairway Seed. Husband was also ordered to pay wife $3,600 a year for three years as rehabilitative alimony. Both parties were responsible for their own attorney's fees, although the court provided that wife could have husband pay her attorney fees and deduct that payment from the first property settlement payment. Additional details are discussed below in the analysis of each issue raised by wife's appeal.

### ISSUES

1. Whether trial court's division of the marital property constitutes an abuse of discretion?

2. Whether trial court's award of rehabilitative alimony evidences an abuse of discretion?

3. Whether trial court's award of wife's attorney fees as a deduction from the property settlement demonstrates an abuse of discretion?

*1. Property Division*

█ Wife argues that the property division was inequitable in that she received

$88,000 of a $195,000 marital estate, roughly forty-five percent, while husband received fifty-five percent or $107,000, and the trial court did not account for the disparity. This court will not disturb a division of property unless it clearly appears the trial court abused its discretion. *Kanta v. Kanta*, 479 N.W.2d 505 (S.D.1991); *Johnson v. Johnson*, 471 N.W.2d 156 (S.D. 1991); *Fox v. Fox*, 467 N.W.2d 762 (S.D. 1991). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Kanta*, 479 N.W.2d at 507 (quoting *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984)). This clear abuse of discretion standard also governs our review of alimony awards and attorney fees. *Johnson*, 471 N.W.2d at 159; *Fox*, 467 N.W.2d at 766.

■ This court has consistently recognized the principal factors to be considered in making an equitable property division as: (1) the duration of the marriage; (2) the value of the property; (3) the age of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. *Kanta*, 479 N.W.2d at 508; *Ryken v. Ryken*, 461 N.W.2d 122, 126 (S.D.1990); *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D. 1988).

Wife's first argument regarding the trial court's property division is that the valuations it placed on the property were unreasonable and incorrect. This court may only disturb a trial court's property valuation if such valuation is clearly erroneous. *Clarke v. Clarke*, 478 N.W.2d 834 (S.D. 1991); *Johnson*, 471 N.W.2d at 162; *Herrboldt v. Herrboldt*, 303 N.W.2d 571 (S.D. 1981). We have previously stated " '[w]here the parties come into the trial

court without even a stipulation as to the values, then they had better be prepared to produce hard evidence as to those values other than their own personal opinions.' " *Clarke*, 478 N.W.2d at 837 (quoting *Hanks v. Hanks*, 296 N.W.2d 523, 526 (S.D.1980)).

In the present case, the only valuations presented to the trial court came from several confidential financial statements introduced by husband. Wife did not offer any hard evidence to support valuations other than those contained in the confidential financial statements. The trial court valued the marital estate at $195,000. This reflected a value of $55,000 on the equity in Fairway Seed, and a value of $140,000 on the total farm operation (including the real estate, buildings, machinery and equipment, vehicles, feed, grain, and growing crops). The trial court's valuation was within the range of figures presented at trial and is supported by the record. As such, we affirm the trial court's valuation of the marital estate.

■ Wife's second argument regarding the property division is that awarding her the interest in Fairway Seed creates an unworkable situation and violates basic principles of partnership law. While we believe it was within the power of the trial court to award the partnership interest to wife, pursuant to SDCL 48-4-17 and 18,[1] we question the wisdom of such a decision.

Other courts have recognized the problems inherent in attempting to equitably award or divide an interest in a jointly owned business to a divorcing couple. The Minnesota Supreme Court recognized that where a business is owned by both spouses, the corporate shares are generally awarded to the spouse more actively engaged in the business of the corporation. *Nardini v. Nardini*, 414 N.W.2d 184, 189 (Minn.1987).

---

**1.** SDCL 48-4-17 provides: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." SDCL 48-4-18 provides:

A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership to

interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

The Court of Appeals of Iowa stated that "[a]n inequitable split [of the business] must often be made in order to keep the business together, thereby allowing one spouse to continue to provide for himself and any other obligations he may have." *In re Marriage of McNamer*, 452 N.W.2d 812, 814 (Iowa App.1990). The New Jersey Supreme Court stated that courts should seek to eliminate any sources of strife or friction in devising distribution schemes, and should separate the financial affairs of the parties as much as possible. *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73, 76 (1984).

In the present case, wife testified that she had never participated in any of the business dealings of Fairway Seed, she was not familiar with the marketing process and did not understand the government programs. Further, she now permanently resides in Minneapolis and the Fairway Seed partnership is with a corporation composed solely of husband's friends. The record reflects husband has been an active participant in the business dealings of Fairway Seed.

Under the current property award, wife stands to collect any profits gained from Fairway Seed, but she also remains obligated for any debts or business losses incurred by Fairway Seed. Further, pursuant to SDCL 48-4-18, she would have no involvement or control in the operation at Fairway Seed, she would only have the potential for profit or loss which is left to the complete control of her husband's friends. This is far from an ideal situation, and a definite possibility for continued strife exists under these circumstances. *Bowen, supra.* We find that because of the limitations on the award of the Fairway Seed interest, and the circumstances surrounding the partnership, that to assign wife a business interest in which she has no meaningful knowledge or control, is an abuse of discretion.

■ As stated above, we find the valuation of Fairway Seed is correct at $55,000. However, we think it a more prudent course to order husband to pay wife the $55,000 sum, plus interest, in installments over a period of years pursuant to *Lien v.*

*Lien*, 278 N.W.2d 436, 444 (S.D.1979), and to allow husband to keep his interest in Fairway Seed. Such an award relieves wife of unforeseeable financial obligations and potential discord with the other partners, and guarantees her an equitable share of the marital estate. Further, this distribution of the parties' assets will settle with finality the parties' property rights and insure that wife will receive the share of the property which trial court concluded she was entitled to. *Lien, supra.* As such, we reverse and remand this portion of trial court's decision with directions to award wife the additional sum of $55,000 and award husband the partnership interest. (The trial court's original decision granted to husband the option of purchasing this partnership interest for $55,000 within 30 days of the judgment, and the record does not reflect whether husband exercised this option. If in fact he did, it would render this modification of the property division moot.) The manner of payment of this $55,000 cash award shall be determined by trial court on remand.

## 2. Rehabilitative Alimony

■ Wife argues that trial court's alimony award is insufficient in both duration and amount. She asserts that her standard of living has changed drastically since leaving the marital home, and she is struggling to make her interior design business a profitable, thriving career.

■ The factors to be considered in awarding alimony are (1) length of the marriage; (2) the parties' respective ages and health; (3) the earning capacity of each party; (4) the financial condition of each party after the property division; (5) the parties' station in life or social standing; and (6) the relative fault in the termination of the marriage. *Kanta*, 479 N.W.2d at 511; *Studt v. Studt*, 443 N.W.2d 639 (S.D. 1989). The record reflects trial court considered these factors in making its alimony award.

Wife will now receive $78,000 in property. The original decree provided for payment of $23,000, payable at $5,000 each year for four years, then a payment of

$3,000, plus interest, in the fifth year. These payments were made payable on April 1 of each year to coincide with husband's seasonal cash flow from the farming operation. Wife under our decision will receive either a $55,000 lump sum payment or that amount in installment payments. The trial court awarded annual rehabilitative alimony in the amount of $3600 for three years, payable November 15 of each year, to again coincide with husband's cash flow. In light of the modification made in this decision to the property division, we do not find this rehabilitative alimony award to be inadequate under the circumstances when considering the amount of alimony in conjunction with the property division and therefore affirm trial court's decision. *Krage v. Krage*, 329 N.W.2d 878 (S.D. 1983).

### 3. Attorney Fees

■ As stated above, the trial court's award of attorney fees is a matter which lies within its discretion. *Kanta*, 479 N.W.2d at 511; *Fox*, 467 N.W.2d at 768; SDCL 15–17–7. Trial court in the present case stated:

> [E]ach party shall pay his or her own attorney fees. [Wife] may elect to have [husband] make payment to [wife's] attorney and deduct that payment from the property settlement due the [wife] on April 1, 1991.

This provision should not be construed as an award of attorney fees but, rather, as a facility of payment provision. The trial court considered the circumstances of the parties and accounted for the fact that wife complained of insufficient cash on hand to meet all her debts. Trial court merely offered wife an alternative to ensure her attorney fees were timely paid. As such, we cannot say it was an abuse of discretion.

Wife also filed a motion for appellate attorney fees, which is supported by an itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985). We have considered the property owned by each party, their relative incomes, the liquidity of their assets and whether either party unreasonably increased the time spent on the case. *Kanta*, 479 N.W.2d at 511; *Studt*, 443 N.W.2d at 644. We accordingly determine that husband shall pay $993.75 for wife's attorney fees.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; dissenting in part).

This Court has opened up the equitable package decided by the trial court.

We have decided what is now "prudent" and thus order the husband to pay the wife $55,000.00 in lieu of an award in the partnership. I can see that there are authorities to support this proposition. I would, in all probability, join the majority opinion totally if the majority would then ask the trial court to consider the rehabilitative alimony award.

As it now stands, under *Krage v. Krage*, 329 N.W.2d 878 (S.D.1983), the trial court can no longer consider the rehabilitative alimony award *together with the property award*. That is the teaching and the holding of *Krage:* The two must be considered together. We are tying the trial judge's hands behind his back as we now send this case back to the trial court. It could very well be that if the trial court is mandated (such as we have effectuated here) to now order that the wife get $55,000.00, and installments over a period of years, that the trial court would not desire, in equity, to award the wife rehabilitative alimony. Again, the trial court should be given an opportunity to rethink its position on the rehabilitative alimony so that the property award and the rehabilitative alimony can be considered "together." *Krage*, at 879; *see also, Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979); and *Lien v. Lien*, 278

N.W.2d 436 (S.D.1979). I agree that the rehabilitative alimony award was not inadequate when looking at the trial court's mind-set at the time of the trial court's decision. However, inasmuch as this Court has seen fit to open up the property award package, it should give the trial court a chance to consider if Sheryl Vander Pol should receive any rehabilitative alimony. We have forsaken the above holdings. As the reader peruses the majority opinion, let me emphasize that this lady has a profitable business underway in Minneapolis, Minnesota. She has good health and an established ability to produce income. It is a source of economic independence. If she is independent, why must the courts make her dependent upon her husband?

It is axiomatic that even-handed justice be applied for both women and men. It is oxymoronic to be independently dependent. I concur with that part of the decision to which I have not dissented.